W. J. ANDERSON v. JOHN LISTON and Others.[1]

June 23, 1897.

Nos. 10,533—(108).

**Contract—Farming on Shares—Crop—Strangeway v. Eisenman, 68 Minn, 395, Followed.**

An agreement for the cultivation of land on shares construed, and *held*, that the owner and the occupier were tenants in common of the crops; the title, however, remaining in the owner as security for the performance by the occupier of the terms of the agreement, and for the repayment of advances which the owner might make to the occupier, and for the payment of all indebtedness due from the latter to the former. Strangeway v. Eisenman, 68 Minn. 395, followed.

**Chattel Mortgage—Filing—Notice to Prior Mortgagee.**

Where a mortgage is given to secure future advances, the filing of a subsequent mortgage is not constructive notice to the prior mortgagee, so as to postpone the lien of his mortgage for advances thereafter made, even although such advances were optional, and not obligatory. The prior mortgagee is affected only by actual notice of the subsequent mortgage, and the burden is on the subsequent mortgagee to prove such notice.

Appeal by plaintiff from a judgment of the district court for Polk county, entered pursuant to the order of Ives, J., and from an order refusing to make amended findings. Affirmed.

*A. A. Miller*, for appellant.

*Martin O'Brien*, for respondent.

[1] Reported in 72 N. W. 52.

MITCHELL, J.

This action was brought to foreclose a chattel mortgage, and to determine certain adverse claims to the mortgaged property. Several persons were defendants or intervenors, all of whom are out of the case except the defendant Wallis, the contest now being entirely between him and plaintiff. Hence many of the findings of fact, and all of the conclusions of law except the first two, are wholly irrelevant to this appeal.

The defendant Wallis, being in the lawful possession of a half section of land, entered into a contract (Exhibit J) with one Liston for the farming of the land "on shares" by the latter during the seasons of 1895 and 1896. This contract was filed in the town clerk's office on May 10, 1895. With the exception of dates and the names of the parties, it was in all material respects a copy of the contract which we considered and construed in Strangeway v. Eisenman, 68 Minn. 395, 71 N. W. 617. Counsel for plaintiff objects that the court failed to find the date on which this contract was executed, but, as it must have been executed before it was filed, the precise date of its execution is immaterial. On May 16, 1895, Liston executed to plaintiff, Anderson, a chattel mortgage on "all the grain to be grown" in 1895 and 1896 on 160 acres of this same land. This mortgage was filed in the town clerk's office July 24, 1895. The court finds, and the finding is supported by the evidence, that during the season of 1895 Wallis advanced to Liston, under the terms of this contract, goods and money to the amount and value of $572, and became liable for $160 more for goods and machinery purchased and used by Liston in carrying on the farm during that season, no part of which sum has been paid by Liston; also, that Liston is indebted to Wallis in the further sum of $171 on account of his default in the performance of the terms of his contract in respect to replowing the land.

The contest between Anderson and Wallis is regarding the crop of 1895. Anderson claims that he is entitled under his mortgage to Liston's two-thirds of the crop; that is, the two-thirds to which Liston would confessedly have been entitled had he fully performed all the conditions of his contract, and paid all the advances, etc., made to him by Wallis. Wallis, on the other hand, claims that under the terms of the contract he is entitled to enough of this two-

thirds to indemnify and repay him for the advances which he made to, and the liabilities which he incurred for, Liston, as well as what the latter is indebted to him on account of his failure to perform the terms of the contract as to plowing, and that plaintiff is only entitled to so much of the two-thirds of the crop as may then be left. The trial court sustained the contention of Wallis.

Under the terms of their agreement, Wallis and Liston were tenants in common of the crops, with the title, however, in Wallis as security for the performance of the conditions of the contract, and for the repayment of "all advances made by him to Liston," and for the payment of "all indebtedness due him from Liston." Strangeway v. Eisenman, supra. So far as it was security for "advances" and "indebtedness," it may be conceded, as the law probably is, that the contract was in effect a chattel mortgage, and was required to be filed, as to subsequent bona fide purchasers and as to creditors. It was filed before the execution of the mortgage to plaintiff. Some of the advances made by Wallis to Liston were made after plaintiff's mortgage was filed; and plaintiff's counsel objects to the refusal of the court to find what part of the advances were made before and what part after the filing of plaintiff's mortgage; also, to the finding of the court that Wallis "had no actual notice of the existence of either of said mortgages * * * until after the advances [$572] and obligation hereinbefore mentioned [$160] had been made and incurred," there being no evidence either way on that point.

The filing of plaintiff's mortgage was no notice to Wallis that any subsequent lien had attached to the property, so as to prevent him from making further advances. A subsequent mortgagee can limit the credit that may be given under a mortgage to secure future advances only by giving the holder actual notice of his lien. There are authorities to the effect that where the advances are optional, and not obligatory, each advance made is to be regarded as a fresh mortgage, and will be subject to the lien of any mortgage filed or recorded when the advance is made, whether the party has actual notice or not; but in our opinion the better rule, and the one sustained by the great weight of authority, is as we have stated. See 1 Jones, Mort. § 372, and cases cited. If plaintiff would postpone Wallis' lien to his own, the burden was on him to prove such notice;

and, having failed to do so, the court was right in finding against him.

In answer to some suggestions made by counsel, we would add that there is nothing in the point that the advances were not such as were contemplated by the contract; also, that we can see no distinction between advances made directly to Liston, and the liabilities to third parties assumed by Wallis for goods and machinery purchased and used by Liston in carrying on the farm.

Counsel also claims that the evidence shows, and that the court should have found, that, if Wallis ever had a lien on the two-thirds of the crops, he had released it by dividing the crops and unconditionally delivering the two-thirds to Liston as his property. We do not so understand the evidence. When this action was commenced, the whole crop, then undivided, was placed by the court in the hands of a receiver. As plaintiff conceded that Wallis was entitled to one undivided third, and never laid any claim to it, the receiver delivered it to Wallis. As we understand the evidence, this is the division to which the witnesses refer.

This disposes of all questions of substance presented by the record, and the result is that the judgment must be affirmed. So ordered.